## Richards *v*. Stewart.

In the Court below,

JAMES STEWART, *Plaintiff*; WILLIAM RICHARDS, *Defendant*.

In an action before the City Court, it is not necessary to aver, that one of the parties lived within the city *at the time the cause of action arose*.

A witness may not testify to the contents of a paper belonging to him, and in his possession, without producing it.

THIS was an action of trover, originally brought before the City court of the City of New-London, for the schooner *Urania*, and her cargo. The action was commenced on the 25th of August, 1804. The plaintiff and defendant were described as of the City of New-London. The ownership and possession of the vessel and cargo, and the losing, by the plaintiff, and the subsequent finding and conversion, by the defendant, were alleged to have been " in said City, on the 3d of said August."

The general issue was pleaded, and closed to the jury. A verdict was found for the plaintiff.

The defendant moved in arrest of judgment for the insufficiency of the declaration. This motion did not prevail.

On the trial, the plaintiff claimed the vessel by a charter-party from *Zebulon P. Burnham*, executed on the 19th of July, 1804, for a voyage to the West-Indies. *Burnham* was claimed to be the owner of the vessel, having built her at Norwich, and obtained a register for her in his own name, and not having made any transfer of her. The plaintiff claimed to have purchased the cargo, " with his own money and credit," except a quantity of flour, which, he claimed, had been furnished by *Gilbert Robertson* & Co. and sent to him to be transported to Barbadoes, and delivered to *George Cruden*, for the use of the contractor for supplying his Britanic Majesty's navy. The plaintiff also claimed, that the vessel and cargo were, when taken, in his possession, lying at his wharf in New-London; and that the captain on board

was captain under the plaintiff, having been appointed by him, and having given him a bill of lading of the cargo.

The defendant, in his defence, admitted the taking of the vessel and cargo, but claimed that they were the property of *Cruden*, and that he had taken them, as a deputy sheriff, by an attachment against *Cruden*, in favour of *Jesse Hopkins*. To establish the fact, that the vessel was *Cruden's* property, the defendant claimed, that she was built by *Burnham*, as *Cruden's* agent, out of funds furnished by *Joseph Howland* & Co. for *Cruden*, at *Cruden's* request, and on *Cruden's* credit; that she was navigated by *Burnham* to the West-Indies, and there left under the controul of *Cruden ;* that *Cruden* put *James L. Dill* on board of her, as his agent and supercargo ; that under the controul of *Dill*, she arrived in New-York in July, 1804, with a cargo of salt, the property of *Cruden*, consigned by him to *Robertson* & Co. with orders to them to purchase for him a return cargo of cattle and provisions ; that the vessel was by them sent to New-London to the plaintiff, with orders for a cargo of bullocks and provisions ; that the salt was left with the plaintiff for sale ; and that the cargo in controversy was purchased for *Cruden*, and for him was put on board of the vessel, by the plaintiff, and received by *Dill*.

To prove the property to be in *Cruden*, as claimed by the defendant, sundry depositions and witnesses were offered. In the deposition of *Henry Eldridge*, connected with other evidence which was admitted to be relevant and proper, were the following questions and answers :

" Q. Did Capt. *Burnham*, when he left the vessel, give " you any orders respecting said vessel ?

" *A.* He gave me orders, that, in case the vessel did not " return immediately home, to give Mr. *Cruden* a bill of sale " of the vessel, and bring home the register.

T t

1806.

RICHARDS
*v.*
STEWART.

" *Q.* Did Capt. *Burnham* give you a power of attorney to " execute a bill of sale to Mr. *Cruden ?*

" *A.* He gave me written orders as above.

" *Q.* Were you not to receive security or payment for the " vessel ?

" *A.* I was not.

" *Q.* At the same time, [when *Dill* first came on board of " the vessel] did you not understand by certain hints and " innuendoes from Mr. *Cruden,* intelligible to you, that you " were to follow Mr. *Dill's* directions in every thing respect-" ing said voyage ?

" *A.* Yes.

" *Q.* Did you ever understand by Mr. *Cruden* and Mr. " *Dill,* that the vessel and cargo were kept under cover of " American colours and papers, to evade French captures ?

" *A.* I so understood.

" *Q.* Did you understand by Mr. *Cruden,* or Mr. *Dill,* that " the vessel was to take in an inboard and deck cargo, and " return to Barbadoes ?

" *A.* I understood so from both, in conversation with " them."

The deposition of *Benjamin Holland* was offered to prove certain written instructions, given by *Burnham* to *Eldridge,* respecting the vessel. These instructions had been read by *Eldridge* to the deponent, but were not produced.

The deposition of *Chauncey Barnard* was offered to prove certain declarations of *Cruden,* in conversation with the deponent, respecting the vessel.

*Roswell Roath* was offered as a witness to prove what *Cruden* had said to the deponent, relative to a contract between *Burnham* and *Cruden*, to build a schooner for the latter.

After having proved, that *Dill* was put on board of the vessel, at Barbadoes, by *Cruden*, as supercargo; that as such he sailed, in June, 1804, and had the charge, and direction of the vessel from Barbadoes to St. Christophers, to take in a cargo of salt, by the orders and for the benefit of *Cruden*, and from St. Christophers to New-York, whither the vessel was ordered by *Cruden*, for the purpose of transporting the salt, and of taking a return cargo ; and that there were four negroes put on board by *Cruden*, as seamen, who arrived with the vessel at New-York, in July, 1804, and were soon afterwards taken, by the direction, and under the care of *Dill*, as supercargo, to New-London ; the defendant offered in evidence an advertisement, subscribed by *Dill*, for the negroes, who had escaped from him, describing them as mariners on board the schooner *Urania*, and slaves, and alleging that they had departed without licence.

To the admission of the evidence recited and stated the plaintiff objected. The Court decided, that the same was inadmissible ; and the defendant filed his bill of exceptions.

The errors assigned were,

1. That the Court adjudged the motion in arrest insufficient.

2. That the evidence stated in the bill of exceptions was not permitted to be given to the jury.

*Dana*, and *Dwight*, for the plaintiff in error.

1. This was an action brought originally before a court of limited jurisdiction. By its constitution, it has cogni-

zance only, where the cause of action arises, and one or both of the parties live, within the city. (*a*)    But it does not appear, by the declaration, that either plaintiff or defendant lived in the city at the time of the conversion.    The description of the parties in the writ relates merely to the time of bringing the action.    But to entitle the City Court to jurisdiction, it must appear, that the plaintiff or defendant was actually residing within the city, when the cause of action arose.    This was decided directly in *Buel* v. *Fabrick*. (*b*)  It is an universal rule, that nothing shall be intended to be within the jurisdiction of an inferiour court, but that which is expressly alleged.    In *Waldock* v. *Cooper*, (*c*) which was *assumpsit* for goods sold and delivered, brought in the borough court of *Aylesbury*, it was held, that the declaration was ill, because it did not allege, that the goods were sold and delivered within the jurisdiction, but only that the defendant was indebted and promised within the jurisdiction.    The same point was decided in *Trevor* v. *Wall*. (*d*)

2. The Superior Court erred in rejecting *Eldridge's* testimony respecting the written orders.

That testimony is objected to, on the general ground, that it is not the best, which the nature of the case admits of. The witness, being in possession of the writing, cannot testify as to its contents, but must produce the writing itself.

Let this fundamental maxim of the law be thoroughly examined, and it will not be found to support the objection.    What is its extent ?  It is always limited to the particular circumstances of the case.    When from the particular circumstances of the case, no better evidence can be

(*a*) *Stat*. 97, *edit*. 1796.
(*b*) 1 *Root* 150.
(*c*) 2 *Wils*. 16.
(*d*) 1 *Term Rep*. 151.

brought, though better may be imagined, and may actually exist, the rule does not require its exclusion. (e)

The *reason* of the rule, that the withholding of the best evidence furnishes a presumption, that, if produced, it would operate against the party, (f) may serve to shew how far the rule is to be carried. Where it is not in the power of the party to produce the best evidence, this reason does not exist.

The rule, then, has this qualification, that it requires such evidence only as is in the party's possession or power; and the evidence which it excludes, is such only as *ex naturâ rei* supposes a still greater evidence behind, in the party's possession or power. In most instances where the rule is laid down in our books, such a qualification is subjoined in express terms. (g)

If any thing further be necessary to shew the extent of this rule, it may be found from the law respecting *making profert*. In general, a man who claims by deed, ought to make a profert of it, in his declaration, or plea, if he be party or privy to it. (h) But where the party has not the deed in his possession, or cannot controul it, he is never bound to shew it. (i)

The cases are numerous, in which it has been held, that

(e) *Gilb. L. Ev.* 4. *Bul. Ni. Pri.* 293. 3 *Bla. Com.* 362. *'Esp. Dig.* 780. *Peake's Ev.* 6. 1 *Mac Nal.* 342.

(f) *Gilb. L. Ev.* 4. *Bul. Ni. Pri.* 293. *Peake's Ev.* 8.

(g) *Gilb. L. Ev.* 16. *Bul. Ni. Pri.* 293. *'Esp. Dig.* 780.— *Peake's Ev.* 63.

(h) 5 *Com. Dig.* 472,3. 5 *Bac. Abr.* 432. 10 *Rep.* 92, *Doctor Leyfield's case.*

(i) 10 *Rep.* 935, *Doctor Leyfield's case.* S. C. *Cro. Jac.* 317, by the name of *Doctor Leafield* v. *Helicar.* *Cro. Jac.* 70, *Dagg & al.* v. *Penkevon.* *Cro. Car.* 209, *Gray* v. *Fielder.* *Cro. Car.* 441, *Stockman* v. *Hampton.* 2 *Co. Litt.* 225 b. 3 *Wils.* 1, *Rawlinson* v. *Stone.* 3 *Term Rep.* 151, *Read* v. *Brookman.* *Bul. Ni. Pri.* 252. *Gilb. L. Ev.* 16.

1806.

RICHARDS
*v.*
STEWART.

when a deed, or other writing, is lost, or in the hands of the opposite party, and withheld, after notice, its contents may be proved. (*j*)

These remarks apply to papers, which belong, in some sense, to *the party.* But what is the law respecting papers, which are in the possession of, or belong to, *third persons ?*

The only power, which the law furnishes to a party, to obtain papers belonging to him, from a third person, is, either by a rule of court, or a *subpœna duces tecum.* (*k*) And this power seems not to be effectual, even in England, in all cases.

But no authority has decided, nor has any judge or jurist intimated, that a witness can be compelled to produce his own papers. In *Robertson* v. *French,* (*l*) which was an action on a policy, the witness who testified to the plaintiff's title to the ship, had disposed of it to the plaintiff, by virtue of a power in writing. No objection was made to his testifying this fact, without producing the power. Had this point been settled against us, it is hardly to be supposed, that so prominent an objection would have escaped such counsel as *Gibbs, Adam,* and *Marryatt.*

This point, however, has been expressly decided in our favour in two cases, one in New-York, and one in England. The former was an action of trover for goods and chattels. The witness made a copy from a paper, which contained an account of the articles. He was asked, what were the contents of that paper ? It was objected, that the paper ought to be produced, or proved to be lost. That objection was over-ruled ; and on writ of error, the judgment was affirmed. (*m*) The other case was before Lord KENYON at *nisi*

(*j*) 1 *Stra.* 70, *Young* v. *Holmes.* 1 *Stra.* 526, *Robinson* v. *Davis.* 1 *Atk.* 446, *Goodier* v. *Lake.*

(*k*) 3 *Bla. Com.* 381.

(*l*) 4 *East* 130.

(*m*) 1 *Johns.* 340, *Waring* v. *Warren.*

*prius.* A witness was called to produce a power of attorney, having been served with a *subpœna duces tecum.* On his neglecting to produce it pursuant to the *subpœna,* Lord KENYON said, he could not be compelled to produce it. His Lordship added, if he could, every man would be obliged to produce every paper in his custody. It would be the ruin of millions. (*n*)

Independent of authorites, it would seem strange, that a man uninterested in the suit, and to whom its event is altogether indifferent, should be forced to yield up his own papers, for the benefit of a stranger.

If, then, there is no legal mode of compelling a witness to produce his own papers, it follows irresistibly, that evidence of their contents must be admitted.

The deposition of *Holland* ought to have been admitted. *He* never was in possession of the paper, and never had it in his power to produce it.

The Superior Court erred also in rejecting the deposition of *Barnard,* the testimony of *Roath,* and the answer of *Eldridge,* as to the hints. Having established, as we contend, a combination between *Burnham* and *Cruden,* it was proper to prove *Cruden's* declarations respecting the property ; for though *Cruden* is not a party to the record, yet he is one of the confederacy, and as such, his declarations are admissible. The testimony of *Eldridge* to the conversation by hints, was proper in itself. It is immaterial in what mode a man conveys his ideas, if they are understood. Hints may be as clear and emphatical as express language. In this case, *Cruden,* wishing to avoid direct declarations, adopted hints as the substitute. These hints were understood by *Eldridge ;* and it is as proper for him to testify to their meaning as if *Cruden* had fully stated his meaning.

(*n*) 1 'Esp. Rep. 405, *Miles* v. *Dawson.*

*Dill's* advertisement went directly to support *Eldridge.* If it was proper to prove *Cruden's* declarations, *Dill,* being proved to be *Cruden's* agent, his acts and declarations, as relative to his agency, at the time he was in the execution of his power, are of course admissible.

*R. Griswold,* and *Goddard,* for the defendant in error.

1. To entitle the City Court to jurisdiction, the statute requires only, that the cause of action arise, and that one or both the parties live, within the city. It does not specify the *time* when these requisites shall exist. As to the cause of action, it is sufficient, so far as it respects the point of jurisdiction, that it accrued at any time since the incorporation of the city, and before the commencement of the suit. The residence of the parties is evidently to be estimated at the commencement of the suit. But, at any rate, the averments of this declaration are conformable to the words of the statute. The Court surely will not give them different constructions. It may be added, that this declaration is in the usual form. It has the sanction of invariable practice.

2. Parol evidence of the written orders to *Eldridge* was properly excluded. The general rule, that parol evidence of the contents of a writing is inadmissible, is not disputed. It has not been shewn, that this case comes within any of the exceptions to that rule. The writing was not proved to be lost, or destroyed ; it did not appear, that it was in the hands of the opposite party, who refused to produce it, after notice ; nor did it appear, that the person in whose hands it was, had been served with a *subpœna duces tecum* to produce it, and had refused to comply. (*o*)

The deposition of *Holland* related to the contents of a wri-

(*o*) *Bul. Ni. Pri.* 293. *Peake's Ev.* 97, *second Lond. ed.* 1 *'Esp. Rep.* 50, *Cowan* v. *Abrahams* & al. *Peake's Ni. Pri. Ca.* 165, *Shaw* & al. v. *Markham.* 1 *Mac Nal.* 349.

ting ; and was, therefore, inadmissible, on the principle just stated.

The declarations of *Cruden* were inadmissible, because he was neither a party to the record, nor the person under whom we claim. The propriety of the decision in the Court below, on this point, may be illustrated by a familiar case. A. puts a horse into the hands of B. and afterwards takes him back ; he is then attached as the property of B. for which A. brings a suit ; can the declarations of B. that the horse was his, be given in evidence against the title of A. ? Further, *Cruden* could not be admitted as a witness, in this case, to establish his title ; much less could his declarations, not under oath, be received.

The declarations of *Dill* were still more remote. He might have been a witness, and the party might have obtained him. (*p*)

The understanding of *Eldridge* from hints and innuendoes, was not evidence. The opinions and constructions of a witness are, in all cases, inadmissible. Inferences from facts are more especially to be excluded, if the facts themselves are not related.

The deposition of *Barnard* related only to conversations with *Cruden* ; and that of *Roath* to conversations with *Cruden*, and to a memorandum in *Cruden's* books, not signed by *Burnham*. These were clearly inadmissible.

*Dill's* advertisement was inadmissible, because it was irrelevant to the issue ; because, it was a paper not signed by a

(*p*) 1 '*Esp. Rep.* 375, *Masters* v. *Abraham.*

U u

1806.

RICHARDS
v.
STEWART.

party, or a witness ; and because *Dill* himself might have been a witness. His declarations and advertisement were but hear-say.

BY THE COURT,

The judgment was affirmed. (*q*)

( *q*) After judgment of affirmance had been entered, and execution issued, several members of the Court, some of whom had been in favour of the decision, doubted its correctness ; whereupon the Court remanded the execution, and adjourned the case until October, for further argument and consideration    The defendant in error then appeared, and moved, that no further proceedings should be had in the case, on the ground, that the judgment which had been rendered was final, and the parties were no longer in court.   This motion prevailed.